UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _6/23/2025_

---

SERGE FRADKOFF,

                Plaintiff,

         - against -

RONALD WINSTON, WILLIAM STADIEM,
SKYHORSE PUBLISHING, and SIMON &
SCHUSTER,

                Defendants.

---

24 Civ. 1830 (VM)

<u>DECISION AND ORDER</u>

**VICTOR MARRERO, United States District Judge.**

Plaintiff Serge Fradkoff ("Fradkoff") commenced this action against defendants Ronald Winston ("R. Winston"), William Stadiem ("Stadiem"), Skyhorse Publishing ("Skyhorse"), and Simon & Schuster (collectively, "Defendants"), asserting a defamation claim in connection with written statements in the book *King of Diamonds: Harry Winston, the Definitive Biography of an American Icon* ("*King of Diamonds*" or "The Book") (See "First Amended Complaint" or "FAC," Dkt. No. 24.) Defendants now move to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (See Dkt. No. 36.) For the reasons that follow, Defendants' motion is **GRANTED.**

## I.    BACKGROUND[1]

Fradkoff is a businessman who began his career working for Harry Winston ("H. Winston"), the founder of the prestigious jewelry company (the "Company"). (See FAC ¶ 33) Fradkoff spent twenty years working alongside H. Winston, first as a trainee, then as his right-hand assistant. (See id. ¶ 3.) When H. Winston died in 1978, his son, R. Winston, took over the Company. (See Book at 322.) Fradkoff spent the end of his tenure with the Company working under the supervision of R. Winston. (See FAC ¶ 3.) Throughout his time with the Company, Fradkoff worked on several large transactions with private clients including royal families, corporate executives, heads of state, and other distinguished consumers and collectors. (See id. ¶¶ 33-35.) In addition to working in the jewelry industry, Fradkoff co-owned an art magazine and served as an executive to a private bank in Geneva. (See id. ¶ 37-39.)

The *King of Diamonds* was authored by R. Winston and Stadiem and was published by defendants Simon & Schuster and Skyhorse Publishing in 2023. (See id. ¶¶ 20-31.) Stadiem, the

---

[1] The following facts are taken from Fradkoff's First Amended Complaint, which the Court must take as true for purposes of resolving Defendants' motion to dismiss. See Safka Holdings LLC v. iPlay, Inc., 42 F. Supp. 3d 488, 490 (S.D.N.Y. 2013). Where indicated, the First Amended Complaint's factual allegations are supplemented by facts drawn from The Book, which is properly before the Court. See Frascatore v. Blake, 344 F. Supp. 3d 481, 489 (S.D.N.Y. 2018).

co-author of The Book, is an attorney based in New York who previously authored books about Hollywood gossip and famous figures such as Marilyn Monroe. (See id. ¶¶ 17, 62-67.) Critics of Stadiem's prior writings have derided his work as overly gossipy and factually inaccurate. (See id. ¶¶ 64-66.)

Although *King of Diamonds* is presented as a biography of H. Winston, The Book is narrated entirely from the first-person perspective of R. Winston. (See generally Book.) The Book recounts H. Winston's life and the founding of the Company, while it also chronicles R. Winston's takeover and leadership during the Company's expansion. (See Book at 322-364.)

The Book portrays Fradkoff negatively, primarily alleging that Fradkoff stole money from the Company and engaged in other misconduct. Specifically, The Book makes the following five statements regarding Fradkoff's conduct:

- One: "I sensed they [Fradkoff] were stealing my family's money";

- Two: "it takes a thief to catch a thief";

- Three: "because there was honor among thieves, Fradkoff never called Bochatay on any of his suspected transgressions";

- Four: "Fradkoff . . . was betting the farm using Harry Winston's funds . . . not only a high crime but a major disaster in the making"; and

3

- Five: "Serge [Fradkoff] paid us back in full, reversing his thievery"

(collectively, the "Challenged Statements" or "Statements".) (See FAC ¶¶ 46-48.)

Fradkoff filed this lawsuit on March 12, 2024. (See Dkt. No. 1.) After the parties exchanged pre-motion letters pursuant to the Court's Individual Practices in anticipation of Defendants' motion to dismiss, Fradkoff filed the First Amended Complaint on July 26, 2024. (See FAC.) The FAC asserts one claim for defamation, alleging that Defendants published the Challenged Statements which falsely accuse Fradkoff of committing serious crimes. Fradkoff alleges that these Statements have disparaged his character, integrity, and lawfulness and caused harm to his businesses. Fradkoff seeks punitive damages in the sum of $100,000,000 (See FAC ¶¶ 91-94).

The parties exchanged pre-motion letters as a basis for filing a motion to dismiss (See Dkt. No. 26.) but were unable to resolve the dispute through those means. Defendants subsequently filed their motion to dismiss with an accompanying memorandum of law, (see 'Defs.' Mem.," Dkt. No. 37), to which Fradkoff filed an opposition, (see "Pl.'s Opp'n," Dkt. No. 41), and Defendants filed a reply. (See "Defs.' Reply," Dkt. No. 43.)

## II.  <u>STANDARD OF REVIEW</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is plausible if the complaint states "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct" — there is not "a probability requirement at the pleading stage." <u>Lynch v. City of New York</u>, 952 F.3d 67, 75 (2d Cir. 2020) (quoting <u>Twombly</u>, 550 U.S. at 556); <u>see</u> <u>Iqbal</u>, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). "In other words, a complaint should not be dismissed when the factual allegations sufficiently 'raise a right to relief above the speculative level.'" <u>Liboy v. Russ</u>, No. 22 Civ. 10334, 2023 WL 6386889, at *4 (S.D.N.Y. Sept. 29, 2023) (quoting <u>Twombly</u>, 550 U.S. at 555).

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."

Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). The Court may also "consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings in order to determine if a complaint should survive a [Rule] 12(b)(6) motion." Garcia v. Lewis, No. 05 Civ. 1153, 2005 WL 1423253, *3 (S.D.N.Y. June 16, 2005).

## III. DISCUSSION

The FAC alleges that the five Statements in *King of Diamonds* are defamatory per se because they falsely accuse Fradkoff of thievery and committing crimes and that the authors acted negligently and with actual malice in publishing the statements. (See FAC ¶¶ 46-48; Pl.'s Opp'n at 8.) Defendants respond that the Challenged Statements are not defamatory because (1) the Statements constitute protected opinion when read in the proper context, (2) Fradkoff has failed to allege their falsity, and (3) regardless of whether the Statements are protected opinion or false, Fradkoff has failed to allege actual malice. (See Defs.' Mem. at 5-7, 37.)

While the Court finds that at least two of the Challenged Statements constitute defamatory statements of fact, Fradkoff has failed to plausibly allege that Defendants published those Statements with actual malice. Therefore, the First Amended Complaint must be dismissed.

A. <u>Legal Standards for Defamation Claims</u>

"Not all (or even most) maligning remarks can be considered defamatory." <u>Chau v. Lewis</u>, 771 F.3d 118, 127 (2d Cir. 2014). Rather, defamation "is defined as the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." <u>Foster v. Churchill</u>, 665 N.E.2d 153, 157 (N.Y. 1996) (internal quotation marks omitted). To allege a libel claim – a form of written defamation – under New York law, a plaintiff must show:

> (1) a written defamatory statement of fact regarding the plaintiff; (2) published to a third party by the defendant; (3) defendant's fault, varying in degree depending on whether the plaintiff is a private or public party; (4) falsity of the defamatory statement; and (5) injury to the plaintiff.

<u>Meloff v. New York Life Ins. Co.</u>, 240 F.3d 138, 145 (2d Cir. 2011).

At the motion to dismiss stage, the court must determine whether the challenged statements are, in the context of the entire publication, "reasonably susceptible of a defamatory construction." <u>Levin v. McPhee</u>, 917 F. Supp. 230, 236 (S.D.N.Y. 1996) (citing <u>James v. Gannett Co.</u>, 353 N.E.2d 834, 837-38 (N.Y. 1976)). Where the challenged statements are

"susceptible of multiple meanings, some of which are not defamatory," the court may not conclude, as a matter of law, that the statements are not defamatory. Celle v. Filipino Reporter Enterprises, Inc., 209 F.3d 163, 178 (2d Cir. 2000) (internal quotation marks omitted).

A court must also determine, as a matter of law, whether a challenged statement is a protected opinion or an actionable factual representation. See Celle, 209 F.3d at 178 (citing Rinaldi v. Holt, Rinehart & Winston, 366 N.E.2d 1299, 1306 (N.Y. 1977)); Crowley v. Billboard Mag., 576 F. Supp. 3d 132, 148 (S.D.N.Y. 2021) ("Expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." (citation omitted)). In distinguishing between opinion and fact, the New York Court of Appeals has identified several considerations:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact.

Gross v. N.Y. Times Co., 623 N.E.2d 1163, 1167 (N.Y. 1993) (alteration and internal quotation marks omitted).

Whether a statement is an opinion, however, is not the end of the inquiry because New York law distinguishes between statements of pure opinion and mixed opinion. See Qureshi v. St. Barnabas Hosp. Center, 430 F. Supp. 2d 279, 288 (S.D.N.Y. 2006). "Statements of pure opinion are not actionable as defamation." Id. A pure opinion is "a statement of opinion that is accompanied by a recitation of the facts on which it is based or one that does not imply the existence of undisclosed underlying facts." Gross, 623 N.E.2d at 1168. A mixed opinion "implies a basis in facts which are not disclosed to the reader or listener," and are actionable because they signal to the reader that the "writer knows certain facts, unknown to the audience, which support the opinion and are detrimental to the person toward whom the communication is directed." Gross, 623 N.E.2d at 1168.

As stated above, a defendant's level of fault depends on the nature of plaintiff's allegations. If defendant is a public figure or if the subject of the defamatory statements is a matter of public interest under New York law, the "actual malice" standard may apply. See Coleman v. Grand, 523 F. Supp. 3d 244, 255-258 (E.D.N.Y. 2021). If the "actual malice" standard does not apply, a plaintiff need only allege negligence. See Prince v. Intercept, 634 F. Supp. 3d 114, 131 (S.D.N.Y. 2022).

Finally, to allege injury, a plaintiff must either allege special damages or that the statement was defamation *per* se, in which case the harm is presumed. <u>See</u> <u>Zherka v. Amicone</u>, 634 F.3d 642, 645 (2d Cir. 2011) (footnote omitted). To plead defamation *per se*, a plaintiff must allege that the statements "(i) charg[e] plaintiff with a serious crime; (ii) that tend to injure [plaintiff] in his or her trade, business or profession. <u>Liberman v. Gelstein</u>, 605 N.E.2d 344, 347 (N.Y. 1992).

    B. <u>Application to the Challenged Statements</u>

    C. Defamatory Statement

Defendants argue that the Challenged Statements are pure statements of opinion based on disclosed facts and thus not actionable. (<u>See</u> Defs.' Mem. at 10.) Defendants primarily rely on the fact that The Book is written by H. Winston's son, R. Winston, and is based on his personal experience. Accordingly, Defendants contend that no reasonable reader would interpret the Challenged Statements as statements of fact given the author's biases and lack of objectivity.

The Court begins by noting that a reasonable reader would recognize that a biography written by the subject's son is unlikely to be wholly objective, especially when it is told from the son's first-person perspective. Despite how third-party sellers may have marketed *King of Diamonds*, no

reasonable reader would expect R. Winston's account to be a disinterested or academic biographical portrayal of H. Winston's life. At the same time, the inquiry here is focused on whether a reasonable reader would interpret the challenged statements as expressions of opinion considering the surrounding circumstances and social context. Biro v. Conde Nast, 883 F. Supp. 2d 441, 460 (2d Cir. 2012). Because The Book is written from R. Winston's first-person perspective, there is an inherent risk that any opinion he expresses that is not based on a full recitation of disclosed facts is actionable, as readers may reasonably assume he has intimate familiarity with undisclosed facts "which support the opinion and are detrimental to" Fradkoff. See Lan Sang v. Ming Hai, 951 F. Supp. 2d 504, 520 (S.D.N.Y. 2013). The Court will evaluate each statement bearing these considerations in mind.

     a. Statement One

The first statement at issue states, "[m]aybe I was just too square to appreciate the cloak-and-daggerness of it all, but what it came down to was that I sensed they were stealing my family's money." (The Book at 277.) Fradkoff argues that Statement One is defamatory because it states that Fradkoff committed a crime. However, viewing this statement in the greater context of the chapter and The Book's publication,

11

the Court finds that Statement One is a non-actionable statement of opinion.

"Accusations of criminality could be regarded as mere hypothesis and therefore not actionable if the facts on which they are based are fully and accurately set forth and it is clear to the reasonable reader or listener that the accusation is merely a personal surmise built upon those facts." Gross, 623 N.E.2d at 1169; see also Parks v. Steinbrenner, 520 N.Y.S.2d 374, 378 (App Div. 1st Dep't 1987) ("So long as the opinion is accompanied by a recitation of the facts upon which it is based it is a "pure opinion" and is afforded complete immunity even [if] the facts do not support the opinion.") In the pages leading up to Statement One, R. Winston details a set of circumstances and facts (which are not alleged to be false) that led to his personal belief that Fradkoff and Bochatay were stealing from the company.  In The Book, R. Winston recounts his apprenticeship in Geneva and his work with Fradkoff and another employee of the Company, Albano Bochatay ("Bochatay"). R. Winston explains that he had "sensed an increasingly sinister ambience, particularly in Bochatay and Fradkoff" but clarifies that "[t]here was nothing tangible, just a slight whiff of putrescence." (Id.) R. Winston goes on to describe the Swiss blind transfer system, in which money could move between bank accounts

without revealing its origin. He recounts his suspicions about Swiss checks presented by Bochatay and whether Bochatay was exploiting the system for personal gain – ultimately leading R. Winston to recount, "I sensed they [Fradkoff and Bochatay] were stealing my family's money." (Id.) A reasonable reader would understand that this statement constitutes an accusation that is "merely a personal surmise buil[t] upon [] facts," Gross, 923 N.E.2d at 1169, especially when articulated as grounded on something R. Winston "sensed." Thus, the Court finds that Statement One is a non-actionable statement of opinion. See, e.g., Silvercorp Metals Inc. v. Anthonion Management LLC, 959 N.Y.S.2d 92 (Sup. Ct. Aug. 16, 2012) (including phrases "like the author believed [plaintiff] committed potential fraud, and that the stated 'opinions' could change, demonstrates that it was an expression of opinion.")

b. Statements Two and Three

Statements Two and Three appear in the same chapter as Statement One and are extensions of the author's impression that Bochatay and Fradkoff were inflating their figures for self-gain. (Book at 285.) After an in-depth narrative of Boachatay's business trips to Saudi Arabia to sell diamonds, the author provides a description of the competition between

13

Bochatay and Fradkoff once Bochatay reported his earnings from his trip:

> The sales prices were all on Bochatay's honor system, so no one really knew what he had actually gotten. Fradkoff, Bochatay's codirector of Harry Winston Geneva, would find out via his telex what his supposed colleague had accomplished. It often drove Fradkoff crazy, because he knew how much "play" there was in these figures, and it takes a *thief to catch a thief* [Statement Two]. *Yet because there was honor among thieves* [Statement Three], Fradkoff never called Bochatay on any of his suspected transgressions.

(Id.) (emphasis added).

Like Statement One, Statements Two and Three are statements of opinion. The author's speculation as to why Fradkoff reacted negatively to Boachatay's figures but failed to reprimand him is an extension of R. Winston's earlier claim in Statement One that their business practices raised financial concerns. Moreover, the phrases "there is honor among thieves" and "it takes a thief to catch a thief" are best understood as idiomatic expressions or rhetorical flourishes, rather than direct factual accusations. These idioms are used to comment on Fradkoff's perceived hypocrisy, irony, or moral ambiguity rather than to accuse him of actual criminal conduct. "Some language, regardless of context, is so vague and hyperbolic that it can only reasonably be viewed as language of opinion." Jewell v. NYP Holdings Inc., 23 F. Supp. 2d 348, 382 (S.D.N.Y. 1998). Statements Two and Three

14

employ this type of language, and when read in context of Statement One, they signal to the reader that the author is expressing a personal opinion about Bochatay and Fradkoff's conduct. Accordingly, Statements Two and Three are nonactionable statements of opinion.

        c. Statements Four and Five

    The same cannot be said of Statements Four and Five. Unlike the prior statements, Statements Four and Five allege that Fradkoff misused Company funds to help an associate attempt to "corner the siler market" and, when confronted faced with the threat of exposure to the French authorities, promptly repaid the money to The Company. (See The Book at 326.) In the context leading up to Statement Four, The Book states, "I found out that a key financer of the Hunts' silver pay was Serge Fradkoff, who was betting the farm using Harry Winston funds." (Id.) The next sentence, Statement Four, reads "Sensing not only a high crime, but a major disaster in the making, I immediately dismissed Serge, demanding full restitution of our money. Otherwise, I threatened to go to the *fiscs*, as the French called the financial authorities." (Id.) The language "high crime in the making" employed in Statement Four has a more precise meaning than the previous statements because, in its context, it identifies a specific instant in which Fradkoff allegedly committed misconduct. The

phrase "high crime" characterizes Fradkoff's misusing company funds to finance a personal silver venture. The context in which Statement Four appears provides readers with virtually no facts that support the authors' allegation. R. Winston offers no explanation as to how he came to discover that Fradkoff was using Company funds to finance his associate's business venture. This lack of explanation "impl[ies] the existence of undisclosed facts" causing "readers . . . to assume those facts are unfavorable to the statement's subject." Coleman v. Grand, 523 F. Supp. 3d 244, 262 (E.D.N.Y. 2021).

Statement Five comes immediately after Statement Four, with The Book stating: "With silver still sky high, Serge paid us back in full, reversing his thievery." (Id.) Read in context with Statement Four, Statement Five accuses Fradkoff of thievery in connection with misuse of Company funds to fund the silver venture and specifically alleges that he paid back the money after facing threat of exposure, further supporting the argument that this is a statement of fact regarding Fradkoff's conduct. A reasonable reader would interpret that because Fradkoff paid back the money under threat of exposure to the authorities, he was guilty of having committed a crime against the Company.

Defendants argue that Statement Four is a hyperbolic expression of R. Winston's opinion, and that Statement Five is a "colorful, old-fashioned expression of" R. Winston's view of Fradkoff's actions. (See Defs.' Mem. at 13-14.) This is a plausible theory if the phrases are read in isolation. However, when placed in their context of R. Winston discovering misconduct and threatening to report Fradkoff to the authorities, the phrases "high crime in the making" and "reversing thievery" signal to the reader that Fradkoff committed an actual crime. In addition, the social context in which The Book was published does not convey the idea that Statements Four and Five are simply R. Winston's opinion. A reasonable reader would assume that R. Winston had intimate knowledge of the transaction at issue, given his role with the Company and closeness with H. Winston, lending plausibility and veracity to these allegations. Therefore, Statements Four and Five do not constitute protected opinion.

d. Defamation Per Se

The Court also concludes, and Defendants do not argue otherwise, that Statements Four and Five are defamatory *per se* because they directly accuse Fradkoff of being a thief in connection with the Company's business. An accusation of theft is an allegation of a "serious crime," making Statements Four and Five defamatory *per se*. See O'Diah v. Yugo Oasis,

954 F. Supp. 2d 261, 275 (S.D.N.Y. 2013) (citing Epifani v. Johnson, 882 N.Y.S.2d 234, 243 (App. Div. 2d Dep't 2009). Moreover, because Statements Four and Five essentially accuse Fradkoff of embezzlement, they tend to "injure [Fradkoff's] trade, business or profession." Fernandes v. Fernandes, 227 N.Y.S.3d 642, 644 (App Div. 2d Dep't 2025). Accordingly, the Court determines that Statements Four and Five were defamatory per se.

    e. Falsity

    Defendants also argue that Fradkoff fails to allege the falsity of the Challenged Statements. (See Def.'s Mem. at 17.) The Court disagrees. To prevail on a motion to dismiss, a plaintiff "must plead facts that, if proven, would establish that the defendant's statements were not substantially true." Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC, 864 F.3d 236, 247 (2d Cir. 2017). "[A] statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." Id. at 242 (internal quotation marks omitted). In evaluating whether falsity is adequately pled, "[c]ourts typically compare the complained of language with the alleged truth to determine whether the truth would have a different effect on the mind

18

of the average reader." <u>Franklin v. Daily Holdings, Inc.</u>, 21 N.Y.S.3d 6, 12 (App. Div. 1st Dep't).

The Challenged Statements at issue state that Fradkoff stole from the Company to fund the Hunts' silver venture and later repaid the money under the threat of police involvement. In contrast, the FAC alleges that "[t]hroughout his career, Fradkoff never committed any crimes, nor has he faced any criminal charges or been found guilty of any wrongdoing." (<u>See</u> FAC ¶ 45.) If true, this allegation would significantly alter how the average reader interprets Statements Four and Five, which accuse Fradkoff of theft and subsequently making restitution under threat of potential prosecution, plausibly asserting that he committed a crime. For these reasons, Fradkoff has adequately alleged falsity.

        f. Malice

Defendants separately argue that the Challenged Statements are non-actionable because (1) the Challenged Statements are statements of public concern and thus are subject to the "actual malice" standard, and (2) the FAC fails to allege "actual malice." The Court addresses these arguments in turn.

        1) Public Concern

Under the New York anti-strategic litigation against public participation ("anti-SLAPP") statute, "an action

involving public petition and participation" must allege
actual malice. N.Y. Civ. Rights Law § 76-a(2). The actual
malice requirement extends to "any communication in a place
open to the public or a public forum in connection with an
issue of public interest." N.Y. Civ. Rights Law § 76(a)(1)(a).
The term "public interest" is to "be construed broadly, and
shall mean any subject other than a purely private matter."
Id. § 76(1)(d). "Matters of 'public concern' generally
include 'matter[s] of political, social or other concern to
the community,' even those that do not 'affect the general
population.'" Lindberg v. Down Jones & Company, Inc., No. 20
Civ. 8231, 2021 WL 3605621, at *8 (S.D.N.Y. Aug. 11, 2021)
(internal citations omitted). "In light of the extremely
broad interpretation of what qualifies as public interest by
New York Courts, cases where the subject matter was not a
matter of legitimate public concern are extremely rare."
Kesner v. Buhl, 590 F. Supp. 3d 680, 693 (S.D.N.Y. 2022)
(alterations and internal citations omitted).

Considering the broad applicability of New York's anti-
SLAPP law, the Court is persuaded that the Challenged
Statements involve a matter of public concern. Contrary to
Fradkoff's argument, The Book is not "comparable to a
publication directed to a limited, private audience." (See
Pl.'s Opp'n at 21.) The Book was published for a general

audience and is marketed and sold on popular third-party
sellers such as Amazon and Barnes and Noble. (See Pl.'s Opp'n
at 7 n.3; FAC ¶ 58); cf. Tsamasiros v. Jones, 223 N.Y.S.3d
144, 148 (App. Div. 2d Dep't 2024) (finding that the
publication was limited to a private audience because it was
distributed only to members of an exclusive club); Nelson v.
Ardrey, 216 N.Y.S.3d 646, 650 (App. Div. 2d Dep't 2024)
(comments on a Facebook post related to the birthday of
plaintiff's daughter are private allegations of crimes and
not within the sphere of public interest.)

Nor can allegations of business misconduct involving a
high-profile company be properly characterized as "mere
gossip and prurient interest." See Lindberg, 2021 WL 3605621
at *10. Rather, the Challenged Statements describe a scheme
by an employee of a prominent jewelry company to
misappropriate Company funds in an effort to finance an
attempt "to corner the silver market." Given The Book's
context as a biography of the Company's founder and namesake,
this statement cannot plausibly be construed as touching on
a "purely private matter." The Book may be a biography of one
individual which touches on matters of his private life, but
it also raises issues of public concern, particularly
regarding corporate governance and the integrity of a
prominent jewelry company. "'[H]uman interest items' may be

matters of public concern if 'reasonably related to matters warranting public exposition.'" Lewis v. Newsday, Inc., 668 N.Y.S.2d 377, 378 (App. Div. 1st Dep't 1998) (internal quotation mark omitted). For these reasons, the Court finds that the "actual malice" standard applies to Plaintiff's claim for defamation.

> 2) The FAC Fails to Allege Actual Malice

"Actual malice" requires that the defamatory statement be "made with knowledge that it was false or with reckless disregard of whether it was false or not." Palin v. New York Times Co., 940 F.3d 804, 809 (2d Cir. 2019). This test constitutes a "subjective" standard and turns on whether there are sufficient allegations to show that the defendant had "subjective doubts about the truth of the publication." Church of Scientology Int'l v. Behar, 238 F.3d 168, 174 (2d Cir. 2001). At the motion to dismiss stage, a plaintiff must allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of actual malice." Biro v. Conde Nast, 807 F.3d 541, 545 (2d Cir. 2015).

Fradkoff argues that he has sufficiently pleaded actual malice, citing his denial of any wrongdoing, Defendants' refusal to retract the accusations upon request, Stadiem's legal background – implying knowledge of the legal elements of theft – and questions about Stadiem's credibility based on

his other published works. (See FAC ¶¶ 8-9, 12, 59-60, 62, 67, 69-71; Pl.'s Opp'n at 23.) In addition, Fradkoff argues that he sufficiently alleges that Defendants' motive for publishing The Book was to provoke this lawsuit which would garner more public attention to The Book and increase sales. (See FAC ¶¶ 73-76.)

The Court disagrees. First, Defendants' refusal to retract the accusations upon request is insufficient because the request to retract did not expose errors that would put Defendants on notice that the statements were false. See Zerangue v. TSP Newspapers, Inc., 814 F.2d 1066, 1071 (5th Cir. 1987) ("Refusal to retract an *exposed* error tends to support a finding of actual malice.") (emphasis added). In addition, Fradkoff's allegations that he has never stolen nor committed a crime and that there is no evidence proving otherwise is also insufficient because they amount to a blanket denial of wrongdoing. "Denials [of wrongdoing] without more do not support a plausible claim of actual malice." See Brimelow v. New York Times Co., No. 21 Civ 66, 2021 WL 4901969, at *3 (2d Cir. Oct. 21, 2021); see also Edwards v. Nat'l Audubon Soc'y, Inc., 556 F.2d 113, 121 (2d Cir. 1977) (the actual malice "standard . . . cannot be predicated on mere denials, however vehement; such denials are so commonplace in the world of polemical charge and

countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error.")

The other allegations Fradkoff cites to support his argument fail to plausibly allege "actual malice." The allegations are largely conclusory and unsupported by specific facts that suggest that Defendants possessed a "high degree of awareness of the statement's probable falsity." McDougal v. Fox News Network, LLC, 489 F. Supp. 3d 174, 185 (S.D.N.Y. 2020) (cleaned up) (internal quotation marks omitted). For example, there are no specific facts pled to support the allegation that "Defendants knew, or should have known, that their accusations were false at the time they made them, as there is absolutely no evidence that Fradkoff engaged in any criminal conduct, let alone theft." (FAC ¶ 59.)

Fradkoff also pleads no facts to support the conclusory allegation that Defendants published *King of Diamonds* in order to induce the instant suit so as to sell more books. Such allegations, absent specific facts indicating that Defendants were aware of the falsity of the Challenged Statements and accordingly intended for the lawsuit to be filed, are speculative. See McDougal, 489 F. Supp. 3d at 186.

Finally, Fradkoff's allegations regarding Stadiem's reputation does not plausibly suggest that Skyhorse and Simon

& Schuster should have had a high degree of awareness of the Challenged Statement's falsity, particularly in light of the fact that H. Winston's son was the co-author of The Book. See Bobulinski v. Tarlov, 758 F. Supp. 3d 166, 180 (S.D.N.Y. 2024) ("[F]ailure to investigate, absent the extreme case of willful avoidance of knowledge [] is insufficient to prove actual malice even if a prudent person would have investigated before publishing the statement.") (internal quotation marks omitted); see also Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 688 (1989) ("[F]ailure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard."). Simon & Schuster and Skyhorse's failure to investigate the accuracy of The Book may conceivably support a claim of negligence, but it was not malicious or reckless. Absent any facts which indicate that Simon & Schuster and Skyhorse had a clear and obvious reason to doubt the veracity of the Challenged Statement, prior reviews of Stadiem's work are insufficient to establish "actual malice" stemming from a failure to investigate as at issue here.

Because Fradkoff fails to allege the requisite level of fault, he fails to state a claim for defamation.

> D. Leave to Amend

"Although Federal Rule 15(a) provides that leave to amend a complaint shall be freely given when justice so requires, it is within the sound discretion of the district court whether to grant or deny leave to amend." <u>Schvimmer v. Off. Of Ct. Admin.</u>, 857 F. App'x 668, 671 (2d Cir. 2021). The Court may deny leave to amend if it determines amendment would be futile or there has been a "repeated failure to cure deficiencies by amendments previously allowed." <u>United States ex rel. Ladas v. Exwelis, Inc.</u>, 824 F.3d 16, 28 (2d Cir. 2016).

The Court will grant Fradkoff leave to amend his complaint as to his defamation claim but only with respect to Statements Four and Five. As a matter of law, Statements One, Two, and Three are pure statements of opinion. Any amendment of Fradkoff's allegations with respect to Statements One, Two, and Three would be futile. <u>See</u> <u>Egiazaryan v. Zalmayev</u>, 880 F. Supp. 2d 494, 513 (S.D.N.Y. 2012).

This is the Court's first opportunity to highlight the defects of Fradkoff's pleading and because the FAC sufficiently alleges all elements of a defamation claim except for the requisite level of fault, it is not yet apparent that another opportunity to amend with respect to the actual malice element would be futile. While Fradkoff did have one opportunity to amend the Complaint after initial

pre-motion letter exchange between the parties pursuant to the Court's Individual Practices, actual malice with respect to the issue of public concern under New York's anti-SLAPP statute, was not thoroughly discussed in the letters.

Accordingly, Fradkoff may file a motion for leave to amend, accompanied by a memorandum of law and a proposed Amended Complaint, within thirty (30) days of this Decision and Order. To the greatest extent possible, Fradkoff's memorandum of law must explain how the proposed Amended Complaint will sufficiently address the deficiencies identified in this Decision and Order with respect to Statements Four and Five. If Fradkoff does not file a motion for leave to amend, or if such motion is filed but denied, this action will be dismissed with prejudice.

## IV.   ORDER

For the preceding reasons, it is hereby

**ORDERED** that the motion (Dkt. No. 36) of defendants Ronald Winston, William Stadiem, Skyhorse Publishing, and Simon & Schuster to dismiss the First Amended Complaint (Dkt. No. 24) of plaintiff Serge Fradkoff ("Fradkoff") is **GRANTED**; it is further

**ORDERED** that Fradkoff may file a motion for leave to amend the Complaint, accompanied by a memorandum of law and a proposed Amended Complaint, within thirty (30) days of this

Decision and Order. If Fradkoff does not file a motion for leave to amend the Complaint, or if such motion is filed but denied, this action will be dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at Dkt. No. 36.


**SO ORDERED.**

Dated:    23 June 2025
          New York, New York

                                     _____
                                       Victor Marrero
                                         U.S.D.J.